In the Matter of BUFFALO BROADCASTING COMPANY, INC., Respondent, v NEW YORK STATE DEPARTMENT OF CORRECTIONAL SERVICES et al., Appellants. (And Another Related Proceeding.)

Third Department, March 22, 1990

### APPEARANCES OF COUNSEL

*Robert Abrams, Attorney-General (Frank K. Walsh* and *Nancy A. Spiegel* of counsel), for appellants.

*Hodgson, Russ, Andrews, Woods & Goodyear (Paul I. Perlman* of counsel), for respondent.

### OPINION OF THE COURT

LEVINE, J.

These appeals, joined for argument, arise out of two requests made by petitioner, the owner and operator of a television station in the City of Buffalo, pursuant to the Freedom of Information Law (Public Officers Law art 6) (hereinafter FOIL). The first of these requests was made by letter addressed to the Superintendent of Coxsackie Correctional Facility in Greene County for all videotapes taken in the course of a prisoners' uprising in the special housing unit (hereinafter SHU) at that facility which took place between August 1 and 3, 1988. This request was denied on the ground that the material sought was exempt from disclosure because it would interfere with the criminal investigation of the uprising and with anticipated criminal prosecutions of the inmates involved *(see,* Public Officers Law § 87 [2] [e] [i]). The second request was

for all videotapes taken by Department of Correctional Services personnel at Attica Correctional Facility in Wyoming County during 1987 and 1988 to date. This request was denied initially and on administrative appeal under the statutory exemptions from disclosure that would constitute an unwarranted invasion of the privacy of the videotaped inmates (citing Public Officers Law § 87 [2] [b]), would endanger the safety and security of the facility (citing Public Officers Law § 87 [2] [f]) and would compromise current litigation initiated by inmates.

Petitioner then brought these CPLR article 78 proceedings to compel the requested disclosures. Respondents' answer to the petition regarding the videotapes sought from the Coxsackie facility contained an affidavit of the facility's superintendent which averred that the only videotaping that occurred was of SHU inmates *"after* the [uprising] was terminated and they left the Unit until they were transferred to other facilities" (emphasis in original). It was further averred that all such videotapes were by then in the possession of the State Police, which was conducting the criminal investigation of the uprising and that the videotapes were intended to be used by the Greene County District Attorney as evidence in the trial of any inmates indicted in connection with the uprising. In addition to the exemption initially claimed that disclosure would interfere with the criminal investigation of the Coxsackie uprising, respondents also asserted that disclosure was exempt because it would jeopardize inmate informants *(see,* Public Officers Law § 87 [2] [e] [iii]) and the safety of depicted inmates in general *(see,* Public Officers Law § 87 [2] [f]).

In their answer to the petition regarding the Attica facility videotapes, respondents reasserted the same three grounds for initially denying disclosure and further averred that the tapes are generally reused every 30 days and that it would impose a virtually impossible administrative burden of reviewing thousands of hours of extant tapes for such 30-day period. Petitioner then limited its request to videotapes which had been segregated for disciplinary use, kept for more than 30 days or showed prisoners moving under restraint.

In the case involving the videotapes at the Coxsackie facility, Supreme Court partially granted the petition by directing respondents to furnish copies of the tapes after reviewing and editing them to redact specific portions which, in fact, might interfere with criminal prosecutions, invade an inmate's expectation to privacy or create a serious safety consideration.

As to any redacted portion, however, respondents were directed to furnish a description of what was excised sufficient to allow the court to determine the applicability of the exemption without in camera viewing of the tapes. As to the petition seeking disclosure of videotapes at the Attica facility, the court granted petitioner's modified request, subject to redaction of any portions showing inmates showering, changing clothes, going to the bathroom or undergoing strip frisks, but required respondents to provide written descriptions of such portions for court review and to furnish petitioner with the names and locations of the inmates involved in strip frisks or with respect to the use of force by guards, to enable petitioner to seek their consent to disclosure. These appeals by respondents ensued.

■ We affirm in all respects Supreme Court's order regarding disclosure of the videotapes at the Coxsackie facility. Respondents' contention that they should be relieved from furnishing the tapes because possession thereof had been transferred to the State Police is unavailing. By statutory definition, the records which respondents are required to make available to the public under FOIL include those "kept, held, filed, *produced* or reproduced by * * * an agency * * * in any physical form" (Public Officers Law § 86 [4]; emphasis supplied). This broad definition is to be applied literally *(Matter of Capital Newspapers v Whalen,* 69 NY2d 246, 251-252). Unquestionably, respondents "produced" the videotapes. Therefore, the fact that the tapes were turned over to another State agency, without additional averments establishing that they are not recoverable, does not absolve respondents from their disclosure obligations under FOIL.

■ Supreme Court also correctly ruled that respondents' conclusory allegations, made without even reviewing the tapes, were insufficient to confer a blanket exemption of all the Coxsackie tapes from FOIL, either as law enforcement material the disclosure of which would interfere with criminal investigations or proceedings (Public Officers Law § 87 [2] [e] [i]), or endanger inmate informants (Public Officers Law § 87 [2] [e] [iii]), or because disclosure would endanger the safety of all inmates shown on the tapes (Public Officers Law § 87 [2] [f]). Respondents have not offered any explanation of why video recordings taken *after* the Coxsackie uprising was quelled were necessary in connection with the investigation of the incident. Without more, respondents' conclusory averments are simply insufficient to exempt in their entirety

records concededly relevant to the operation of their agency. As the Court of Appeals held in rejecting a similar blanket claim to another statutory exemption in *Matter of Washington Post Co. v New York State Ins. Dept.* (61 NY2d 557, 567): "This claim is presented in the form of conclusory pleading allegations and affidavits to the effect that every page of the minutes contains such sensitive information, all this without the benefit of evidentiary support. Consequently, the burden of proving that the records should be exempted in their entirety has not been met * * *. That some portions of the records may be entitled to exemption does not warrant withholding the minutes completely * * *. Whether and what portions should be protected can be ascertained at the *in camera* inspection that was ordered by Special Term." Supreme Court's order, authorizing respondents to edit out the specific portions of the Coxsackie facility videotapes which are actually exempt, but to provide sufficient descriptions of what was redacted for judicial review of the justification for the claimed exemptions, fully conforms to the burden placed on State agencies regarding exemptions from FOIL under *Matter of Washington Post Co. v New York State Ins. Dept. (supra)* and should, therefore, be upheld.

■ Supreme Court was likewise correct in rejecting respondents' claim that the Attica facility videotapes were entirely exempt from disclosure as an unwarranted invasion of inmate privacy or because any disclosure would endanger the safety of correction officers or inmates. The only apparent statutory basis for the privacy exemption claim is that depicting inmates in a prison setting constitutes "disclosure of information of a personal nature when disclosure would result in * * * personal hardship to the subject party" (Public Officers Law § 89 [2] [b] [iv]). Application of the privacy exemption from FOIL disclosure requires a balancing of the subject person's expectation of privacy against the statutory policy favoring the right of the public to information concerning the operations of government *(Matter of Dobranski v Houper,* 154 AD2d 736, 737-738). In our view, an inmate in a State correctional facility has no legitimate expectation of privacy from any and all public portrayal of his person in the facility, as respondents' claim of total exemption of the videotapes on privacy grounds necessarily implies. As Supreme Court noted, inmates are well aware that their movements are monitored by video recording in the institution. Moreover, respondents' regulations require disclosure to news media of an inmate's

"name * * * city of previous residence, physical description, commitment information, present facility in which housed, departmental actions regarding confinement and release" (7 NYCRR 5.21 [a]). Visual depiction, alone, of an inmate's person in a correctional facility hardly adds to such disclosure.

■ Nor can we accept the proposition that the mere disclosure to the public of videotapes of inmates and correction officers in the Attica facility and of the physical layout of the facility's SHU endangered safety and security so to require a blanket exemption of the tapes from FOIL disclosure under Public Officers Law § 87 (2) (f). Respondents have made no factual showing whatsoever in their submissions in the record that the videotapes would reveal anything more to inmates than would be personally observed during their actual confinement. Here, again, respondents' conclusory allegations, unsupported either by a visual demonstration from the tapes or by other evidentiary facts, are insufficient to establish total exemption on safety grounds (see, Matter of Washington Post Co. v New York State Ins. Dept., supra). To the extent that the Fourth Department's decision in Matter of Lonski v Kelly (149 AD2d 977) holds to the contrary, we decline to follow it.

■ Nonetheless, we are of the view that Supreme Court too narrowly restricted application of FOIL's personal privacy exemption by limiting redaction only to portions of the tapes showing inmates in states of undress, engaged in acts of personal hygiene or being subjected to strip frisks. There may be additional portrayals on the tapes of inmates in situations which would be otherwise unduly degrading or humiliating, disclosure of which "would result in * * * personal hardship to the subject party" (Public Officers Law § 89 [2] [b] [iv]). Moreover, Supreme Court should not have rejected out of hand any consideration of aspects of danger to inmates or correction officers in public disclosure of the tapes. There may indeed be portions of tapes the disclosure of which would entail the possibility of danger to personal safety of inmates or correctional facility staff (see, Public Officers Law § 87 [2] [f]; Matter of Stronza v Hoke, 148 AD2d 900, 901, lv denied 74 NY2d 611). We think that it would have been appropriate for Supreme Court to have adopted the same proviso as it did in the case of the Coxsackie facility videotapes, permitting respondents to redact those portions of the tapes disclosure of which would invade an inmate's expectation of privacy or create a serious safety consideration, but requiring respondents to prepare and submit a description of the redacted

portions sufficient to allow Supreme Court to determine the applicability of the exemption. Hence, the judgment in that proceeding should be modified to add such a provision, and otherwise affirmed.

CASEY, J. P., WEISS, MIKOLL and YESAWICH, JR., JJ., concur.

Judgment entered May 3, 1989 affirmed, without costs.

Judgment entered May 22, 1989 modified, on the law and the facts, without costs, by allowing respondents to redact portions of the videotapes and prepare a description of the redacted portions in accordance with this court's decision, and, as so modified, affirmed.